Ronald BRADLEY et al.,
Plaintiffs-Appellees,

v.

William J. MILLIKEN, Governor of Michigan, and Michigan State Board of Education, et al., Defendants-Appellants,

Board of Education, City of Detroit, Michigan, et al., Defendants.

No. 75–1668.

United States Court of Appeals, Sixth Circuit.

June 19, 1975.

Certiorari Denied Nov. 3, 1975.
See 96 S.Ct. 280.

Frank J. Kelley, Atty. Gen. of Mich., Lansing, Mich., Theodore Sachs, Detroit, Mich., for defendants-appellants.

Louis R. Lucas, Ratner, Sugarmon & Lucas, Memphis, Tenn., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

ORDER

This is an appeal from an order of the United States District Court for the Eastern District of Michigan requiring the State defendants to acquire 150 buses to be used in the Detroit desegregation plan to be implemented by the order of the District Court. The case was submitted on briefs and oral arguments this June 11, 1975.

Upon consideration, this court concludes that the District Judge had no choice, under the decision of the Supreme Court in *Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), except to order the immediate acquisition of school buses. No party to the proceeding made any representation to the contrary during the course of the hearing in this court.

Likewise, this court has no choice under the just cited decision of the Supreme Court except to affirm the result of the order of the District Court requiring the acquisition of school buses now, as herein modified. This modification is based upon the representations to this court made by the State defendants and is consistent with the spirit and purposes of the constitutional and statutory provisions and the case law of the State of Michigan as recited in said representations. Said order is modified to read as follows:

Plaintiffs having moved for an order requiring the purchase of transportation equipment, and the court having reviewed the briefs submitted by the parties and having considered the arguments of counsel and being fully advised in the premises:

It is, therefore, ordered, pursuant to *Bradley v. Milliken,* 484 F.2d 215, 258 (6th Cir. 1973), *rev. on other grounds,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), that the Order for Acquisi-

tion of Transportation entered by this court on July 11, 1972, be and hereby is reinstated but modified as follows:

1. The Detroit School Board, defendants, shall acquire by purchase, lease or other contractual arrangements 150, 66-passenger yellow school buses meeting the requirements of Michigan Law, to be used in the Detroit Desegregation Plan to be implemented by order of the court. Such purchase, lease or other contractual arrangements shall be consummated no later than July 3, 1975.

2. The State defendants shall bear the costs of this acquisition to the extent of 75% thereof[1], and the State defendants shall take all necessary steps utilizing existing funds already allocated, or to be allocated and by re-allocating existing or new funds, to pay or reimburse the State's share of such transportation acquisition.

EDWARDS, Circuit Judge (concurring).

I join my colleagues in the drafting and issuance of today's order because any final decision of the United States Supreme Court is the law of the land. But conscience compels me to record how deeply I disagree with the decision which we are enforcing. In *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), the Supreme Court overruled this court and the United States District Court in Detroit by reversing a carefully documented finding of fact that racial desegregation in the schools of Detroit could not be accomplished within the boundaries of the Detroit school district where the school population was found to be approximately 64% black, with a predicted 72% black school population by 1975–76 and 80.7% by 1980–81. The decision also imbued

school district boundaries in Northern states (which like Michigan, had never had school segregation laws) with a constitutional significance which neither federal nor state law had ever accorded them.

This court's opinion in *Bradley v. Milliken*, 484 F.2d 215, 217 (6th Cir. 1973), had accepted a finding by the District Judge that a desegregation plan limited to Detroit "would result in an all black school system immediately surrounded by practically all white suburban school systems, with an overwhelmingly white majority population in the total metropolitan area." The Supreme Court did not overturn that finding.

The key sentence in the majority opinion of the Supreme Court reads: "The constitutional right of the Negro respondents residing in Detroit is to attend a unitary school system in that district." Presumably this means that if and when the Detroit school district becomes 95% or more black, immediately surrounded by suburban school districts 95% or more white, no problem of federal constitutional significance arises.

Unless the thrust of this sentence is altered by further Supreme Court interpretation or overruling—or by action in the area of racial integration by Congress or the Presidency—it can come to represent a formula for American apartheid.

Since the Supreme Court decision is based in part upon the fact that (like all Northern states) Michigan never had school segregation by state statute, the case creates one law for the North and another for the South.

I know of no decision made by the Supreme Court of the United States

1. In *Milliken v. Bradley*, 418 U.S. 717, 726, 94 S.Ct. 3112, 3118, 41 L.Ed.2d 1069 (1974), the Supreme Court said:

"The District Court also found that the State of Michigan had committed several constitutional violations with respect to the exercise of its general responsibility for, and supervision of, public education. [Footnote omitted.] The State, for example, was found

to have failed, until the 1971 Session of the Michigan Legislature, to provide authorization or funds for the transportation of pupils within Detroit regardless of their poverty or distance from the school to which they were assigned; during this same period the State provided many neighboring, mostly white, suburban districts the full range of state-supported transportation."

since the Dred Scott decision (*Scott v. Sanford*, 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1857)) which is so fraught with disaster for this country.